JUDGE DAVID BRIONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 SEP 16 PM 3:42
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| JOSE ALMANZA lll, <br><br> Plaintiff, <br><br> v. <br><br> DANIEL AKIN INSURANCE AGENCY LLC <br> a Texas Limited Liability Company <br><br> Defendants. | § § § § § § § § § § § § § |

EP22CV0329

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff JOSE ALMANZA lll is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant DANIEL AKIN INSURANCE AGENCY LLC ("Farmers") is a limited liability company organized and existing under the laws of Texas and can be served via registered agent Daniel C. Akin at 190 S. Collins, Suite 104, Sunnyvale, TX 75182.

### NATURE OF ACTION

3. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . .. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

1

4.      Plaintiff JOSE ALMANZA lll ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant Farmers telemarketers and agents placed illegal unauthorized telemarketing phone calls to his personal cell phone in violation of the TCPA.

5.      Defendant Farmers offers home and auto insurance to consumers. As part of marketing their services, Defendant Farmers hired and authorized telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

6.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

7.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8.      This Court has personal jurisdiction over Defendant Farmers because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District. Defendant Farmers principal address is located in Texas.

9.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant Farmers regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

16.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

19.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section

227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS:

23. Plaintiff received at least six (6) unauthorized phone calls to his personal cell phone ending in 2012 from or on behalf of Defendant Farmers soliciting auto insurance without Plaintiff's prior express written consent ("the calls").

24. No emergency necessitated none of the calls.

25. With information and belief Plaintiff has received more phone calls from or on behalf of Defendant Farmers that are unknown to Plaintiff at this time and will be revealed during discovery.

26. Plaintiff's personal cell phone ending in 2012 has been successfully registered on the National Do-Not-Call Registry since October 19, 2021, which has been more than 31 days from receiving the calls. *See Exhibit A*.

27. Defendant Farmers hires and authorizes third-party telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an ATDS to solicit Defendant Farmers goods and services.

28. Defendant Farmers approves of the contracts with these telemarketers.

29. Defendant Farmers pay the telemarketers out of bank accounts they own and control.

30. Defendant Farmers are well aware that the unauthorized phone calls being made on their behalf soliciting their insurance policies violate the TCPA.

31. Defendant Farmers knowingly and willfully violate the TCPA because doing so benefits Defendant Farmers financially when consumers purchase one of their insurance policies.

32. Defendant Farmers have knowledge of and have adopted and maintained TCPA violations as a sales strategy. Defendant Farmers knew full well that offshore telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendant Farmers. Defendant Farmers willfully accepts these referrals and compensate the telemarketers for their illegal phone calls.

33. Plaintiff has never had an established business relationship with Defendant Farmers and did not give his prior express written consent to receive any of the calls from or on behalf of Defendant Farmers.

34. On August 22, 2022, Plaintiff received a phone call to his personal cell phone 2012 from a telemarketer calling on behalf of Defendant Farmers soliciting auto insurance.

35. Plaintiff answered and said "hello" there was a 3-4 second delay followed by an audible beep, indicating the call was made using an ATDS before being connected to a male telemarketer with an Indian accent.

36.     The telemarketer advised Plaintiff the phone call was about Plaintiff's auto insurance and asked Plaintiff how much he was paying a month for auto insurance.

37.     Plaintiff was confused and aggravated for receiving the call because he did not request information regarding auto insurance.

38.     Plaintiff did not want or need auto insurance however advised the telemarketer he did in order to identify the company responsible for authorizing telemarketers to call his personal cell phone soliciting auto insurance.

39.     The telemarketer then gathered Plaintiff's personal and vehicle information and transferred Plaintiff a representative named Dale Hickson.

40.     Dale advised Plaintiff he was with Defendant Farmers which confirmed the company responsible for the calls.

41.     Dale asked Plaintiff a series of qualifying questions and solicited Plaintiff for auto insurance on behalf of Defendant Farmers.

42.     Plaintiff advised Dale that he was at work and would call Dale back if Plaintiff was interested in a auto insurance policy from Defendant Farmers.

43.     Over the next few days Plaintiff started to be harassed by Dale from by both phone calls and automated text messages continuing to solicit auto insurance on behalf of Defendant Farmers.

44.     The automated text messages Plaintiff received from Dale came from phone number (972) 289-4585 which confirmed the Farmers Insurance agent responsible for the calls. *See Exhibit B.*

45.     Table A below summarizes the phone calls Plaintiff received from Defendant Farmers. Table A:

7

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 08/22/2022 | 10:20 AM | 972-289-9585 | Indian telemarketer. Transferred to Dale Hickson from Farmers |
| 2 | 08/23/2022 | 1:49 PM | 972-289-9585 | Call from Dale call dropped |
| 3 | 08/23/2022 | 1:50 PM | 972-289-9585 | Call from Dale told him I was at work |
| 4 | 08/23/2022 | 1:55 PM | 972-289-4585 | Automated text message from Dale |
| 5 | 08/26/2022 | 9:24 AM | 972-289-9585 | Missed call from Dale |
| 6 | 08/26/2022 | 9:26 AM | 972-289-4585 | Automated text message from Dale |

46.     Defendant Farmers employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

47.     Defendant Farmers and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators, and then placed phone calls using an ATDS *en masse* to market their insurance policies.

48.     Defendant Farmers refuse to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit them financially when consumers purchase a home or auto insurance policy from them.

49.     Plaintiff sent an internal do-not-call policy request to Defendant Farmers to email dakin@farmersagent.com on September 13, 2022 which is listed on their Facebook social media page they own and control https://facebook.com/danielakinfarmersinsurance .

50.     Despite this e-mail, Defendant Farmers failed and/or refused to send Plaintiff a do-not-call policy.

51.     Upon information and belief, the Defendant Farmers did not have a written do-not-call policy while it was sending Plaintiff the unauthorized phone calls.

52.     Upon information and belief, Defendant Farmers did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

53. Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

54. Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## **VICARIOUS LIABILITY OF DEFENDANT FARMERS**

55. Defendant Farmers is vicariously liable for the telemarketing calls that generated the lead on their behalf.

56. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

57. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

58. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

59. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

60. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

61. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

62. To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

63. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

64. Defendant Farmers is legally responsible for ensuring that their telemarketers, representatives, and affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

65. Defendant Farmers knowingly and actively accepted business that originated through illegal telemarketing.

66. Defendant Farmers knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

67. By hiring a company to make calls on its behalf, Defendant Farmers "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

68. Moreover, Defendant Farmers maintained interim control over the actions of its telemarketers.

69. For example, Defendant Farmers had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

70. Furthermore, Defendant Farmers had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant Farmers and the ability to require them to respect the National Do Not Call Registry.

71. Defendant Farmers also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

72. Defendant Farmers donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "auto insurance" policies in the abstract.

73. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

74. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

75. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

76. Defendant Farmers' telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant Farmers. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

77. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

78. Defendant Farmers is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

86. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

87. Defendant Farmer's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

88. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed by and/or on behalf of Defendant Farmers.

89. Defendant Farmer's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

90. The calls were to the Plaintiff's cellular phone 2012, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

91.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

92.     Defendant Farmers and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least three (3) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

93.     Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(b)(3)(B) by Defendant Farmers by the telephone calls described above, in the amount of $500.00 per call.

94.     Plaintiff was further statutorily damaged because Defendant Farmers willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

95.     Plaintiff is also entitled to and does seek an injunction prohibiting Defendant Farmers and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or without prior express written consent.

## COUNT TWO:
## (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

96. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97. Defendant Farmers called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

98. Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by Defendant Farmers by the telemarketing calls described above, in the amount of $500.00 per call.

99. Plaintiff was further statutorily damaged because Defendant Farmers willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

100. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
## Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

89. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

90. The foregoing acts and omissions of Defendant Farmers and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

    a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

    c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

91. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

92. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jose Almanza lll prays for judgment against the defendant jointly and severally as follows:

    A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

    B. A declaration that actions complained of herein by Defendant violate the TCPA law;

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for 3 calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for 6 calls.

E. An award to Plaintiff of damages, as allowed by law under the TCPA;

F. An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

G. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

September 16, 2022,              Respectfully Submitted,

*/s/ Jose Almanza III*

Jose Almanza III
Plaintiff, Pro Se
14387 Armando Silva Drive
El Paso, Texas 79998
915-256-2012
Almanzj915@gmail.com